Lukich v. Utah Construction Co., 48 Utah 452.

---

## LUKICH v. UTAH CONSTRUCTION CO.

No. 2904.   Decided September 29, 1916.   (160 Pac. 270.)

1.  APPEAL AND ERROR—REVIEW—RECORD. In case of appeal there must be record evidence showing that a final judgment was rendered and entered, or the appeal cannot prevail. (Page 454.)

2.  JUDGMENT—ENTRY—JURISDICTION OF COURT. Where an appeal was taken after granting of a non-suit in September, 1913, and no final judgment was attempted to be entered until August, 1915, the trial court did not lose jurisdiction to enter final judgment, merely because the judgment was not entered immediately after the motion was sustained, or because of a premature appeal which could not effectuate anything, but the case continued pending in the trial court for final disposition. (Page 455.)

3.  APPEAL AND ERROR—TIME FOR TAKING APPEAL—NUNC PRO TUNC ENTRY. Under Comp. Laws 1907, section 3301, providing that an appeal may be taken within six months from the entry of judgment, where a final judgment was not entered and an appeal for that reason failed, a judgment could be entered, the time within which an appeal must be taken runs from the actual entry of the judgment, and such entry for purposes of appeal may not be considered a nunc pro tunc entry. (Page 456.)

4.  STATUTES—PREVIOUS DECISIONS AS CONTROLLING DECISIONS OF OTHER JURISDICTIONS—SAME STATUTE. Where Comp. Laws 1907, section 3301, touching time for taking appeals, was taken from

the California Code, a California case construing the section is decisive of the question involved. (Page 456.)

5. APPEAL AND ERROR—REVIEW—ASSIGNMENTS OF ERROR—RECORD. Where a record on appeal disclosed that the parties stipulated that the abstract used in a former appeal, dismissed as premature, might be used in instant appeal, the rule of the court was substantially complied with, and its purpose subserved when appellant obtained leave to refile the original abstract which contained the assignments of error, as respondent was apprised of errors relied on. (Page 457.)

6. APPEAL AND ERROR—REVIEW—ABSTRACT—JUDGMENT. Where a judgment was in the judgment roll, but was not printed in the abstract, because a new abstract was not printed after judgment was entered, but abstract used in a premature appeal was refiled by consent, a rule requiring the judgment to be printed in the abstract, but not in terms, making failure to print it in the abstract a cause for dismissing an appeal, is directory, and in view of the stipulation, the rules of the court were substantially and sufficiently complied with to withstand a motion to dismiss the appeal. (Page 457.)

7. MASTER AND SERVANT—ACTION FOR INJURIES—ASSUMPTION OF RISK. In an action for death of plaintiff's son, where it appeared that deceased was killed in the performance of a portion of his usual duties, in prying down a mass of rock and earth on a 45-degree incline, pursuant to the orders of defendant's foreman, although it be conceded that the foreman did not exercise ordinary care under the circumstances, the conditions and danger which were an ordinary incident of the work being such that a person of ordinary intelligence must be presumed to have appreciated them, the deceased willingly assumed the risk.[1] (Page 458.)

8. MASTER AND SERVANT—ACTION FOR INJURIES—ASSUMPTION OF RISK. In an action for death of plaintiff's son, the fact that deceased, who was fully developed both physically and mentally and had been engaged in the work for a month before the accident, was only nineteen years of age, standing alone, does not prevent a finding that as a matter of law he assumed the risk.[2] (Page 462.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

[1] *Toone* v. *O'Neill Const. Co.,* 40 Utah 265, 125 Pac. 10.

[2] *Cook* v. *U. S. Smelting Co.,* 34 Utah 190, 97 Pac. 28; *Richards* v. *Ogden Steam Laundry,* 32 Utah 423, 91 Pac. 267; *Golesh* v. *Utah Apex Min. Co.,* 49 Utah ...., 162 Pac. 369.

Action by Niko Lukich against the Utah Construction Company, a corporation.

Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Weber & Olson*, for appellant.

*Howat, MacMillan & Nebeker*, for respondent.

FRICK, J.

This is the second appeal in this case. *Lukich v. Utah Const. Co.*, 46 Utah 317, 150 Pac. 298.

The first appeal, upon respondent's motion, was dismissed upon the sole ground that it was premature; that is, it was brought before final judgment had been duly entered in the case. After the former appeal was dismissed a judgment was duly entered and a motion is now interposed by the respondent to dismiss this appeal: (1) Because the District Court had lost jurisdiction to enter judgment; (2) that no final judgment appears in the printed abstract; and (3) that the assignments of error do not appear in the printed abstract.

As before stated, the former appeal was dismissed upon respondent's motion upon the sole ground that no final judgment of dismissal had been entered after its motion for nonsuit was sustained. It is a universal rule that in case of appeal there must be record evidence showing that a final judgment was rendered and entered, or the appeal cannot prevail. We need not now inquire whether the appellant could or could not have perfected his former appeal under our statute. It is sufficient for the purposes of this decision to know that the appeal was dismissed upon the sole ground that it was prematurely brought. After the remittitur from this court had reached the District Court from which the former appeal was taken and in which the motion for nonsuit was granted in September, 1913, the appellant moved the District Court that it direct that a final judgment of dismissal be entered, which was accordingly done. This appeal is from that judgment.

It is now contended that inasmuch as the motion for nonsuit was made in September, 1913, and that an appeal was taken and dismissed, and that no final judgment was attempted to be entered until August, 1915, the District Court had lost jurisdiction of the cause and was powerless to enter judgment therein. We cannot see any reason for so holding. If the former appeal was premature, as we held it was, then there was in fact no appeal that could effectuate anything. We are of the opinion that the court did not lose jurisdiction to enter final judgment merely because the judgment was not entered immediately after the motion for nonsuit was sustained. Until a final judgment was entered the cause was not disposed of, and in one sense, therefore, it continued to be pending in the District Court for final disposition. Such disposition was not made until August, 1915, when the final judgment, which now is appealed from, was entered. We cannot see why the District Court did not possess the same power to enter judgment in August, 1915, that it had in September, 1913, when the motion for nonsuit was interposed, but no judgment was entered thereon and to that effect are the authorities. In *Waters* v. *Dumas*, 75 Cal. 563, 17 Pac. 685, a judgment was not entered until about four months had elapsed after it should have been entered, and it was held that judgment was properly entered, and that the California statute, which is the same as ours respecting the time judgment should be entered, was directory merely. In *Edwards* v. *Hellings*, 103 Cal. 204, 37 Pac. 218, judgment was not entered until eight years had elapsed, yet the Supreme Court of California held the judgment was properly entered. See also, *Brady* v. *Burke*, 90 Cal. 1, 27 Pac. 52. In *Shephard* v. *Brenton*, 20 Iowa 41, a judgment entered more than eighteen months after verdict was held proper and timely. To the same effect are *Mountain* v. *Rowland*, 30 Ga. 929, and *Burnett* v. *State*, 14 Tex. 455, 65 Am. Dec. 131. We are of the opinion, therefore, that the court had ample power to enter final judgment, and that in case it had refused it could have been compelled to do so.

It is, however, further insisted that we are without jurisdiction because the motion for nonsuit was made and sustained in

September, 1913, and that all that was left undone was merely to enter final judgment. It is therefore contended that the judgment entered in August, 1915, **3** was a mere nunc pro tunc entry which related back to the time when the motion for nonsuit was sustained, and that for that reason the time for appeal commenced to run in September, 1913, when final judgment should have been entered. No doubt there are jurisdictions in which it is held that such an entry of judgment, as between the parties, constitutes a nunc pro tunc entry. 2 Cyc. 796, 797. There are other cases in which it is held that where the belated entry merely constitutes an amendment of a judgment originally entered, such entry is merely a nunc pro tunc entry which relates back to the time the original judgment was entered and does not enlarge the time within which to appeal. *Estate of Scott*, 124 Cal. 671, 57 Pac. 654. Such, however, is not the case when no judgment has been entered. Our statute (Comp. Laws 1907, Section 3301) so far as material here, provides:

"An appeal may be taken within six months from the entry of the judgment."

That section was taken from the California Code of Civil Procedure, Section 939, and was incorporated into the Revised Statutes of Utah of 1898 as Section 3301. The Supreme Court of California, in 1888, in the case of *Coon* v. *United Order of Honor*, 76 Cal. 354, 18 Pac. 384, construed Section 3301, *supra*, and it is expressly held that in case a final judgment has not been entered, and an appeal for that reason fails, a judgment may be entered and the time within which an appeal must be taken runs from the actual entry of the judgment, and that such entry, for the purposes of appeal, may not be considered as a nunc pro tunc entry. In passing upon that point the Supreme Court of California there said:

"The rights of the parties in respect to an appeal are determined by the date of the actual entry of the judgment, and they cannot be affected by the entry of the judgment nunc pro tunc as of a prior date. The time to appeal begins to run from the time of the actual entry."

In view that our statute is taken from California that case is decisive of the question just discussed.            **4**

It is, however, also contended that the appeal should
be dismissed because "the assignments of error do not     **5, 6**
appear in the abstract," and because the final judg-
ment is not printed therein.   The record discloses that the
parties stipulated that the "abstract of record used in the
former appeal   *   *   *   may be used in the present appeal."
Appellant, therefore, prepared no new nor additional ab-
stract.   It is now contended that under the rules of this court
appellant should have prepared an additional abstract in
which he should have printed the assignments of error and the
final judgment.   The assignments of error that are relied on
here are a verbatim copy of the assignments on the former ap-
peal, all of which were printed in the abstract.   All that the
appellant would have accomplished by printing the last as-
signments of error would have been to print a duplicate of
the former assignments.   Since appellant was given the right
to use his original abstract we cannot see why it was necessary
for him to again print what was already contained in the origi-
nal abstract.   As a matter of course he was required to file
new assignments of error, or, at least, to obtain permission
to refile his old ones.   He did that.   We think the rule of this
court was substantially complied with when appellant ob-
tained leave to refile his original abstract which contained the
assignments of error as filed in this case.   Surely, neither the
court nor respondent could have been benefited by reprinting
the assignments of error.   The object or purpose of the rule
was, subserved, since respondent was apprised of the errors
appellant relied on so that it could answer them and could
assign and file cross-errors if it desired to do so.   It is true
that the judgment is not printed in the abstract.   It is, how-
ever, in the judgment roll, and the only reason it is not in the
printed abstract is because no new abstract was printed after
the judgment was entered, as before stated.   The rule, how-
ever, does not, at least not in terms, make the failure to print
the judgment in the abstract a cause for dismissing an appeal.
Admitting, however, that under the rule the judgment should
have been printed in the abstract, yet the rule is directory
merely and was promulgated as a means of promoting the ends
of justice and to aid or advance judicial administration. More-

over, in view of the stipulation before referred to, if the respondent did not waive its right to interpose this objection, yet the rules have been substantially complied with, and this is sufficient to withstand a motion to dismiss an appeal. The motion to dismiss the appeal, therefore, cannot prevail.

This brings us to the merits of the appeal. The plaintiff, who is a resident of Austria, brought this action to recover damages for the death of his son Mike Lukich who was employed by, and, it is alleged, was killed through the negligence of the defendant. At the conclusion of plaintiff's evidence the defendant moved for a nonsuit on various grounds, among others, that no negligence had been shown on the part of the defendant, that the deceased had assumed the risk of injury, and that he was guilty of contributory negligence, which was the proximate cause of his death.

The controlling facts, briefly stated, are, that in July, 1910, the defendant was engaged in making a somewhat extensive excavation along the side of a mountain; that in making the excavation the material, including rocks, was blasted from the mountain side by means of explosives, and a steam shovel was used to take up the material after blasting and to load it upon cars which were operated along the foot of the mountain. After blasting down the material, and in loading it upon the cars with the steam shovel, what is called a one-to-one slope, that is, a 45-degree incline, was formed along the mountain side, which was quite high. In blasting, and perhaps in removing the material from the mountain side with the steam shovel, often some boulders or rocks, or other masses of material, were lodged on different parts of the slope or incline aforesaid. When that occurred it was the duty of the deceased to go along the slope, and, with an iron bar or some suitable instrument, pry loose the rocks and material aforesaid so that they would roll or slide down the slope or incline to the foot thereof. It was necessary to do that so as to protect the men, who were working at and about the steam shovel at the foot of the incline, from being injured by the rocks and material which would become loosened by the operation of the steam shovel, and thus would roll or slide down the incline aforesaid. In the forenoon of the 21st day of July,

1910, it appears that some rocks or a considerable mass of material lodged some distance up the incline which, in the condition it was in, constituted a menace and danger to the workmen at work at the steam shovel, and to those working at the foot of the incline as before stated. What was said and done just before the accident occurred is not made as clear by the record as it might be, yet we thing the evidence clearly tends to show that when rocks or masses of material would lodge at different points of the incline and thus become dangerous to the men working below one of the employees would go, or be directed to go, up the incline to pry down such material or to start it down the slope; that Mike Lukich, the deceased, was one of the employees who went up the incline from time to time to pry down such material; that he had been so engaged for about a month before the accident; that on the morning aforesaid a mass of rocks or material had lodged near the top of the incline, and the foreman of defendant, a Mr. Brown, told Lukich to pry down the material. In the language of the witness this is what occurred:

"Brown told him (Lukich)    *    *    *    'You go around the steam shovel and go to the bar and take this bar and knock that stuff down.' The boy (Lukich) said, 'It looks kind of dangerous.' Brown said, 'It looks pretty good; don't be scared; it is solid; you go ahead and do it.' "

The witness further said:

"Young Lukich went to the top of the slope to the bar and as soon as he put his hand on the bar all the stuff and him and the bar went down. It was rock the steam shovel couldn't reach, and men are sent to pry them down."

On cross-examination the witness further said:

"Before Mike went up where he was told to go I could see that the material and rock was loose, but it didn't look very dangerous because it was covered with sand and dirt. I did not pay much attention to it. After this coming down with Mike there was a few big rocks there. Where Mike went there were no projecting rocks in the slope."

Lukich was precipitated down with and among the mass of rocks and material, and was killed.

Appellant's counsel contend that Mr. Brown was negligent

in ordering the deceased to go up the incline to pry down the material. They further contend that in any event if Brown's act did not constitute negligence as a matter of law the question of whether it was or was not negligence was, nevertheless, for the jury. In answer to respondent's contention that the deceased, under the circumstances of this case, assumed the risk of injury appellant's counsel further contend that the question of whether the deceased appreciated the danger, although he knew it, was also a question which should have been submitted to the jury. As abstract legal propositions counsel's contentions are correct. The question, however, is whether the contentions are applicable to the undisputed facts of this case. We have gone as far as any court emanating from a jurisdiction where the doctrine of assumption of risk is a defense in sustaining the contentions contended for by appellant's counsel. See *Toone* v. *O'Neill Const. Co.*, 40 Utah 265, 125 Pac. 10, and cases there cited. It is made apparent from the Toone Case, however, and also from similar cases, that before the doctrine contended for by appellant's counsel applies the facts must be such that a jury of reasonable men would be authorized to say that in ordering the servant to do the thing complained of the master was negligent. Counsel concede that such is the law. Indeed, it is alleged in the complaint that the act of Brown in ordering the deceased to pry down the material constituted negligence. We can, however, not agree with counsel in their conclusions. In making the excavation, as we have seen, a more or less high and steep incline was necessarily formed. Along or on the side of this incline, in the ordinary and natural conduct of the work, loose rocks and masses of material would, from time to time, gather and lodge, which, if left in that condition, created a menace and a danger to all the men who worked at the foot of the incline. In order to protect those working there against such danger the rocks and masses of material which gathered and lodged as aforesaid had to be pried down from time to time. This, it seems, was not an infrequent occurrence, and to pry down such rocks and masses of material was a part of the deceased's duty. That more or less danger would be encountered in prying down such rocks and masses of material must

have been apparent to every person of the most ordinary intelligence. Indeed, the ordinary forces of nature, the law of gravitation, the effect of which every person of ordinary intelligence is presumed to know, would cause the rocks and material to slide down the incline whenever the force of gravitation overcame the inertia of the material lying loose on the incline. From the evidence it is clear that the actual condition of the mass of material the deceased went to pry down was seen and understood by him. He, it must be assumed, knew and appreciated, what all other men of ordinary intelligence knew and appreciated, which was, that if he went on the mass of material, and that if it should go down as a mass, he, of necessity, must go down with it, and if he did, he might, and in all probability, would be seriously injured. Then again, how can it be said that in ordering a servant to perform a part of his duty constitutes negligence? If that were so no master could, without impunity, direct any servant to do anything without becoming liable in case injury should result. All that Mr. Brown did was to direct the deceased to take the iron bar and go up the incline to where the mass of material had lodged and to cause it to slide down the incline, and in that way to prevent it from endangering the lives of the other workmen. That was a necessary part of the work. In doing it the servant would necessarily incur more or less danger, but whatever the danger it was a mere incident to the work that had to be done. How can it be said, therefore, that Mr. Brown was negligent in ordering the work done?

Let it be conceded, however, that Mr. Brown, in directing the deceased to go upon the incline and pry down the mass of material that had lodged there, failed to exercise ordinary care under the circumstances and that the jury would be justified in so finding, yet that, standing alone, would not be controlling. The conditions and danger arising from going upon the incline were as open and apparent to the deceased as to Mr. Brown. Indeed, one cannot peruse the testimony of the witnesses who testified for the plaintiff (although all seemed to be foreigners and unfamiliar with the English language and for that reason their statements in some respects are not as lucid as they might be) without becoming convinced

that every one of them fully knew and appreciated the danger incident to the prying down of material that lodged on the incline as aforesaid. How could it be otherwise? Any person of ordinary prudence and intelligence must be assumed to have known that any attempt to move any considerable mass of material, whether composed of rocks or of mixed rocks and earth, down the incline, which was 45 degrees, danger would be encountered, that such danger was unavoidable, and that it was a mere incident of doing the work. That being so, one attempting it must be held to have willingly assumed whatever risk there was.

But it is contended that in prying down such loose masses of material a rope was sometimes used, one end of which was tied around the man who would pry down the material and the other end held by some one on the top of the incline or fastened to some object so as to prevent the man from going down with the mass, as did the deceased. There was, however, nothing said about using a rope at this time. By merely viewing an occurrence in retrospect most any one can always discover or point to something that might have been done or omitted. That is not the test. The question is: Did the person charged with negligence fail to exercise ordinary care? That is, did he do or omit to do some act which men of ordinary prudence under the circumstances would have done or would have omitted? In view of all the circumstances, what is there that any one can say Mr. Brown did that he should not have done or that he omitted to do which he should have done in carrying on the work? He merely insisted that the usual precautions be taken to prevent injury to the men working below. But, as before pointed out, the risk or danger incident to effectuating that purpose was just as open, just as apparent, and must be assumed was appreciated by any one who was capable of doing the work as it was to Mr. Brown. In this connection it is asserted that the deceased was only nineteen years of age. That fact, standing alone, does not affect the result. *Cook* v. *U. S. Smelting Co.,* 34 Utah 190, 97 Pac. 28; *Richards* v. *Ogden Steam Laundry,* 32 Utah 423, 91 Pac. 267. In the Cook Case the injured employee was only sixteen years of age, and yet it was held that

he assumed the risk. The evidence is that the deceased was fully developed, both physically and mentally, was strong and intelligent, and had ben engaged in the work for a month or so before the accident occurred. If it should be held, therefore, that under the undisputed facts the deceased did not assume the risk as matter of law it would, in effect, amount to a holding that the doctrine of assumed risk no longer prevails in this jurisdiction. It may be that it would be more just and equitable to all employees that the business or enterprise be made to bear the loss incident thereto. Such, however, is not the law in this jurisdiction. *Cook* v. *Smelting Co., supra.* If the doctrine of assumed risk shall be abrogated in this jurisdiction it should be done by the Legislature, and not by the judicial branch of the state government. The cases and authorities that control in cases of assumption of risk have been cited and referred to in the case of *Golesh* v. *Utah Apex Min. Co.,* 49 Utah —, 162 Pac. 369, and it is not necessary to refer to them again.

We are of the opinion that the judgment should be affirmed. Such is the order; respondent to recover costs.

McCARTY, J., concurs.

STRAUP, C. J. (concurring).

From the nature of the work prosecuted, the case is not within the rule where the master was required to make or could make the place safe or guard the servant against dangers incident to the work or where the master was derelict in the discharge of any such duties, nor is it one where the master directed a servant to a place or to do something at or about which the servant could assume that the master was required to do or had done anything with respect to making the place safe or guarding the servant against dangers, nor one where the servant could absolve himself from the charge of assumption of risk by yielding his judgment respecting danger to that of his master's.