CHEZ, as Atty. Gen., and ex rel. WEBER COLLEGE et al.
v. UTAH STATE BLDG. COMMISSION et al.

No. 5972.   Decided December 24, 1937.   (74 P. [2d] 687.)

*S. D. Huffaker,* of Salt Lake City, for plaintiffs.

*John D. Rice,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

Petition was filed by the Attorney General of Utah and the other plaintiffs praying for a writ of mandamus to the Utah State Building Commission, and the individual members thereof, commanding them to proceed with the construction of the Carbon Junior College and Weber College, pursuant to provisions of chapter 113, Laws of Utah 1937, and alleging that all matters preliminary to such construction required by law to be done had been done, and that the Governor of the state of Utah had allocated and made available for such purposes the amounts of $150,000 and $80,000, respectively, and that in addition thereto the federal government had allotted to the state for the construction of said buildings the sums of $123,211 and $65,592, respectively. An alternative writ of mandamus was issued.

The defendants responded to the writ and answered alleging that the provisions of chapter 113, Laws of Utah 1937, making appropriations for the colleges mentioned, are ambiguous, and that the commissioners are not certain as to their duties in the premises, particularly because of ambiguity as to the amount of money appropriated and available for such purposes. In their brief they say:

"And it appears that the purpose of the Legislature was to build three certain buildings and one other building if there be any surplus with which to build. Therefore, if the court takes the view that the $150,000 for instance, appropriated to Carbon Junior College is the total amount, including the grant of funds from Federal sources, then there might be a surplus for a state prison. But if the court takes the view that the appropriation of $150,000 does not include any other funds from any other sources, then there will be no balance for the state prison."

The pertinent provisions of chapter 113, Laws of Utah 1937, are as follows:

"In addition to the above, there is hereby appropriated from the emergency relief fund for the fiscal years beginning July 1, 1937, and July 1, 1938, the following sums of money: * * *

"To the governor to be used under his direction in providing needed state buildings...................$330,000.

"Said amount together with such other funds from federal or other sources as may be made available to use in connection therewith shall be expended as provided by chapters 22 and 23, Laws of Utah, 1933, as subsequently amended, and the order of preference in erecting public buildings shall be: 1. Carbon Junior College $150,000. 2. Tuberculosis Sanatorium $100,000. 3. Weber College $80,000. 4. The balance such as there may be, State Prison."

"The governor shall have authority to reduce or transfer items or parts thereof within any appropriation, or eliminate any appropriation made herein, or transfer any appropriation or part thereof to the general fund."

A stipulation signed by the parties reads as follows:

"It is hereby stipulated by and between the above named parties through their respective counsel that the plans, specifications and designs for the construction of the Weber College and Carbon College have been prepared in a preliminary form by the above State Building Commission and that the said plans, specifications and designs have been approved by the State Board of Education, which is the proper party to make such approval.

"It is further stipulated that the Federal Government has allotted to Carbon College for the construction of said building the sum of $123,211 and has allotted to Weber College the sum of $65,592.

"It is further stipulated that the Governor of the State of Utah has set and made available the sum of $330,000 for the purpose of constructing the buildings upon the Carbon College, Weber College and the State Tuberculosis Sanatorium."

The question submitted to us for determination may be concisely stated to be: Is the legislative appropriation of $150,000 for the Carbon Junior College and $80,000 for the Weber College inclusive or exclusive of any federal funds that may be available? That is to say, under the stipulation that federal funds have been made available for the purpose, has the building commission available to it for construction of the Carbon Junior College a total of $273,211, or only a total of $150,000; and for the Weber College a total of $145,-592, or only $80,000?

The ambiguity is claimed to exist because of the particular wording of the above section of the statute which, with appropriate deletion, reads:

"To the governor to be used under his direction in providing needed state buildings .......................................... $330,000

"Said amount together with such other funds from federal or other sources as may be made available to use in connection therewith * * * and the order of preference in erecting public buildings shall be: 1. * * * 2. * * * 3. * * * 4. The balance such as there may be, State Prison."

It is argued that under the rules of statutory construction requiring that effect be given to each word, phrase, clause, and sentence of a statutory enactment (*Smith* v. *Lenzi,* 74 Utah 362, 279 P. 893), we must so construe the appropriation that there shall be some money appropriated for the purpose of building a state prison; that if the $150,000, the $100,000, and the $80,000 is the total amount to be expended for the three buildings, including the grant of funds from the federal government, there would then be a surplus for the state prison; while if the appropriation did not include such funds as may be allotted by the federal government, then there would be no balance for the state prison because the first three items exhaust the state's appropriation of $330,000.

The rule of interpretation is not as narrow as above stated. Effect should be given to every word, phrase, clause, and sentence of the statute where reasonably possible. *Price* v. *Industrial Commission,* 91 Utah 152, 63 P. (2d) 592. The court should, where possible without adding to or taking from the language employed, find a meaning compatible with reason and sense. *Robinson* v. *Union Pac. R. Co.,* 70 Utah 441, 261 P. 9. In *People of Puerto Rico* v. *Shell Co.,* 58 S. Ct. 167, 169, 82 L. Ed. —, Mr. Justice Sutherland gave the following rule:

"Words generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the law-

makers; and this meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed."

The provision with respect to the state appropriation can be given a reasonable meaning, as we shall show hereafter, without affecting the governor's allocation of the $330,000 to the three buildings first named.

No attack has been made on the particular method of appropriation; that is, where the whole sum is appropriated to the Governor and he is vested with discretion to reduce, transfer, or eliminate items or parts thereof. It is sufficient to say that in the absence of a constitutional provision to the contrary the power of the Legislature on the subject of appropriations is plenary. *Parks* v. *Commissioners of Soldiers' & Sailors' Home,* 22 Colo. 86, 43 P. 542; *Le Febvre* v. *Callaghan,* 33 Ariz. 197, 263 P. 589; 59 C. J. 238; *State* v. *Zimmerman,* 183 Wis. 132, 197 N. W. 823.

Before we discuss the question of ambiguity in the appropriation, it is well to have in mind other provisions of the law respecting the state building commission and the two colleges. The powers of the building commission are stated as follows in section 10-0-7, R. S. Utah 1933:

"The Utah state building commission shall carry out the building and expansion program of the state provided by law, as and when funds are from time to time available. The order in which such program shall be carried out, and the time when the various items thereof shall be undertaken and completed, shall be wholly within the discretion of the commission and it is given power and authority to do any and all things which in its judgment may be necessary or proper for carrying out the provisions of this title, including the following express powers and duties:

"(1) To cause to be prepared and submitted, either by its own employees or others, designs, plans and specifications for the various buildings and improvements, and other work to be carried out by the commission; provided, that no building shall be constructed, improvements made or work done for, or on the property of, any state institu-

tion until the location, designs, plans and specifications therefor shall be approved by the board, commission or officials charged with the administration of the affairs of such institution * * *

"(3) To make contracts for any work which the commission is authorized by law to do or cause to be done."

By chapter 77, Laws of Utah 1937, Carbon College was created in the following language:

"Upon condition that the taxing units of Carbon county shall provide a suitable campus there shall be at Price City, Carbon county, state of Utah, a state school to be known as the Carbon college, a junior college. The course of study therein shall be limited to the first two years of college work and may be open for registration of students for the school year 1938. Said school shall be maintained by the state."

In the appropriation bill of 1937 Laws, p. 274, c. 158, is the following:

"To Carbon Junior College for Payment of Operating Expenses for the First Year of Operation or for School Year 1938-1939 .... $27,000."

It is alleged in the petition and admitted:

"That the taxing units of Carbon County, Utah, have provided a suitable campus at Price City, Carbon County, Utah, for the erection of the said Carbon College and the title to the said campus has been duly conveyed to the State of Utah and the said Carbon College, and the State of Utah is now the owner of and in possession thereof."

"That immediately after the enactment of chapter 113, Laws of Utah 1937, the Governor of the State of Utah, in accordance with the laws of this State relating to the subject, directed that the respondents above named, immediately proceed with the construction of the buildings, above mentioned, and made available to the said respondents, the monies appropriated to the said Carbon and Weber Colleges as provided in said Chapter 113."

We take judicial notice of the fact that Weber College is already in operation and that the appropriation of $80,000 is undoubtedly for an addition to that structure. An adequate appropriation was made to the Weber College for its

operation for the school year 1938-1939. The appropriation to Carbon Junior College, above referred to, shows the undoubted intention of the Legislature that the college building should be promptly constructed so as to be ready for occupation and use on or prior to the beginning of the school year 1938-1939.

The statute we have quoted above with respect to powers of the Utah State Building Commission vests in it certain discretion with regard to the time when the work shall be undertaken and completed, but it is also enjoined to carry out the building program of the state as and when funds are from time to time available. It might be objected that this court could not issue a writ of mandate requiring the commission to proceed because of its discretion as to when work shall be undertaken. The issue here, however, is quite different. It is alleged and admitted that the commissioners have failed and refused to commence the construction of said buildings or any portion thereof and have declared that they will not do so at all unless so ordered by this court.

We have been advised in argument, and the fact is verified by the stipulation showing the amount of money allocated by the government, that the United States government through its Public Works Administration, will match state money at the ratio of 45 per cent to 55 per cent of the state appropriation. The federal grant was undoubtedly based on the amount of money actually appropriated by the state and allocated by the Governor to the particular purpose for which the federal money was made available.

It is an elementary proposition that the state Legislature cannot appropriate money from the federal treasury. So far as any appropriation was made by the state Legislature, it was of money from state funds alone. The appropriation was $330,000 to the Governor to provide needed state buildings. Any discretion with respect to such appropriation was vested in the Governor and in no one else. Had the Legislature intended to limit the Carbon Junior College to a total cost of $150,000, it could have used

language which would clearly place that sort of limitation on the cost of the structure. As it is, the language is susceptible of only one reasonable construction and that is the interpretation the Governor himself has given to it; that the Legislature intended that of the $330,000 appropriated to the Governor $150,000 should be made available to Carbon Junior College, $100,000 to the tuberculosis sanatorium, and $80,000 to Weber College, subject to discretion in the Governor to reduce or transfer part of such sums to some other purpose, a discretion the Governor saw fit not to exercise. The legislative intent disclosed by the statute is that if for any reason it became impossible or impracticable to use the appropriated money for the preferred purposes, the Governor could then allocate such part not used to the state prison. To illustrate, if the Carbon taxing units had failed to furnish a suitable campus on which the college could be constructed, the Governor might then be justified in allocating the $150,-000 to the state prison. Certainly, after the Governor made available the $150,000 to Carbon Junior College and the federal government made available an additional $123,211, there could be no question whatever but that the building commission had the sum of $273,211 for use in the construction of the Carbon Junior College. There might have been some uncertainty, and some legal questions involved, had the Governor seen fit, in the exercise of his discretion, to have deprived the college of part or all of the $150,000 and allocated it to the state prison. This he did not do. If the argument of defendants is that the wording of the statute requires some part of the $330,000 to be allocated to the state prison, it is fallacious. There is no definite appropriation to the prison and there is no requirement that the Governor shall use all or any part of the amount appropriated to him for building purposes for the prison. The appropriation was to the Governor for certain building purposes with some discretion left vested in him and certain preferences announced by the Legislature. The Governor has exercised his discretion in making effective the legislative preference as plainly

indicated by the wording of the statute. Neither the building commission nor this court has power to control the action of the Governor within the authority given him by the Legislature.

If we look at the problem from the view of the federal grant, then we arrive at the same result. No matching of the state money is made by the federal government unless and until there is a definite appropriation of such money to a definite purpose, and then the government proportion is 45 per cent as against 55 per cent of state money. The construction contended for by the defendants would lead to this absurd result; that the Legislature's intent was to limit the cost of the two colleges and the sanatorium to $330,000, the amount of the state appropriation, thus leaving the federal government to finance the state prison. This would be an indirect attempt to appropriate federal money to the state prison.

Another defect pointed out in the act is the reference to chapters 22 and 23, Laws of Utah 1933, as amended. A reading of these chapters in the Laws of 1933 discloses that the subject-matter thereof is entirely foreign to anything related to the subject-matter involved in the appropriation statute and that the citation is a mistake. There are chapters 22 and 23, Laws of Utah 1933, Second Special Session, which provide for participation by the state, cities, and counties in the Public Works Program of the federal government, and authorize the acceptance by the state of grants or loans made by the United States government for use on such a program of public works. We may inquire into the purpose sought to be accomplished in order to supply the missing words. Words which are obviously necessary to complete the sense will be supplied to effect a meaning clearly shown by other parts of the statute. Black on Interpretation of Laws, 2d Ed., 165. The language of the above-quoted section from chapter 113 is sufficient to disclose the legislative intention to build certain structures under the Public Works Program as provided in chapters 22 and 23, Laws of

Utah 1933, Second Special Session. We are also aided by the fact that in a prior paragraph of chapter 113 the same chapters 22 and 23 are mentioned and correctly stated to be in Laws of Utah 1933, Second Special Session. Indeed, the effect of the statute would not be impaired if the clause with reference to chapters 22 and 23, Laws of Utah 1933, were omitted entirely, because the general law enacted in chapter 23 of Laws of Utah 1933, Second Special Session, would control the expenditure of moneys where the state and federal moneys were used in a Public Works Program. The omission of the words "Second Special Session" was obviously an oversight on the part of some one which should not stand in the way of a proper construction being given the section. This court cannot assume the Legislature intended anything so absurd and meaningless as the expenditure of these building funds with reference to chapters 22 and 23 of Laws of Utah 1933, which have to do with ratification of amendments to the Constitution of the United States and the appointment of fish and game license agents. The section therefore will be read as if the correction had been made.

In fairness to the members of the state building commission, we should quote the last paragraph of their brief, as follows:

"The State Building Commission and its members are desirous of carrying out the mandate of the Legislature, but say earnestly to this court, they are unable to satisfy their minds as to the meaning of chapter 113, Laws of Utah 1937, and respectfully ask this Honorable Court to construe this language and when and if the language is construed, the Building Commission will build and construct the buildings indicated by decision of said court and under the direction of said Chapter 113 as construed."

With the meaning of the act clarified, the duty of the commission is clear. It must proceed timely with the construction of the buildings. All the steps necessary to be done before the construction is commenced have been done. The land has been obtained and title is in the state; the money is available from the state treasury and

from the federal grants; the amounts specified have been allocated by the Governor to the particular purposes; and plans and specifications have been prepared and approved by the board of education. Under this state of the case there is no discretion in the commission except to proceed with the work. While the commission has certain discretion respecting time and methods of procedure, it has no legal right to exercise such discretion to defeat the expressed will and purpose of the Legislature which is the timely construction of these buildings with state funds and with the aid of federal funds. It is alleged and admitted that the federal government has placed a time limit within which construction must be commenced if its moneys are to be used. The building commission should therefore proceed with construction within the time limited so as to avail itself of the federal funds.

The alternative writ of mandamus heretofore issued is made permanent.

HANSON and WOLFE, JJ., concur.

LARSON, Justice (concurring in part, dissenting in part).

We are all agreed that the Utah State Building Commission should proceed promptly and expeditiously with the erection and construction of the buildings for Carbon College and the additions to the Weber College. But there are some matters in the opinion of the Chief Justice to which I cannot subscribe and so I deem it proper to state my views.

There is but one question presented in this action, to wit, How much money is available to the Utah State Building Commission for expenditure in the erection and construction of Carbon Junior College, at Price, Utah, and for additions to Weber College at Ogden, Utah? Or to put it in other words, What is the meaning and interpretation of that part of chapter 113, Laws of Utah 1937, relating to Carbon College and Weber College? All other matters are merely decorations, camouflages, and habiliments to bedeck this ques-

tion in the form of a lawsuit for our determination. The matter comes before us distinctly as a "case made," a "friendly suit" to obtain a certain judicial determination, without a basic or real dispute between the parties, as is evidenced by the fact that the Attorney General brings the action, and some members of his office staff appear for plaintiffs, while others appear for defendants. This method of presenting questions for judicial determination is not to be commended or encouraged. It is hardly fair to the court, nor to the parties involved. We do, however, meet the problem squarely, and determine the question, regardless of how it came before us, since it is one fraught with some public interest and concern.

The action was instituted by a petition for writ of mandate commanding the state building commission, and the individual members thereof, to forthwith proceed with the erection and construction of the Carbon College and the additions to Weber College.

Responding to the alternative writ issued by the court, defendants assert they "are desirous of carrying out the mandate of the legislature" and "of erecting and constructing the buildings," that they have had prepared general plans and specifications for said buildings; but a question has arisen as to the meaning and interpretation of chapter 113, Laws of Utah 1937, and they are unable to determine and ascertain whether there is available for Carbon College the sum of $273,211, or only $150,000; and for Weber College the sum of $145,592, or only $80,000; and until such matter is determined, they are unable to proceed intelligently, and efficiently, and to carry out the will of the Legislature, and perform properly their duty in the premises. They further assert that as soon as such matter is determined, they will promptly proceed with the erection and construction of said buildings within the funds thus determined to be available for such purposes.

It appears from the pleadings, the stipulation filed, and the admissions of counsel in the arguments, that the building

commission was expeditiously proceeding with its work in regard to these colleges when a question as to the interpretation, meaning, and validity of chapter 113, supra, arose in some other litigation. It also appears, from this action as well as other matters, that the staff of the Attorney General was not in full agreement on the interpretation to be given the statute. We may remark in passing that neither side made a full and proper interpretation of the act in question. As pointed out by the Chief Justice, to keep the act from being absurd and ridiculous, we are required to read into it, certain words, not found therein. This we may do, and it is our duty so to do; but no one would contend that the building commission either could or should read words into an act not placed there by the Legislature, to give the act an effect they may desire.

I refer to these matters to show that the building commission was justified in declining to proceed further until the law was interpreted by the court, or some unity of opinion of its meaning arrived at, so they would know to just what extent they could go in the premises.

The act in question, chapter 113, Laws of Utah 1937, so far as material here, provides that all revenue collected or received from the licenses and taxes imposed by the Emergency Revenue Act, commonly called the Sales Tax Act, chapter 63, Laws of Utah 1933, as amended by chapter 20, Laws of Utah, Second Special Session, as amended by chapter 92, Laws of Utah 1935, shall be deposited with the State Treasurer to be credited by him to the Emergency Relief Fund. Certain appropriations are then made from the revenues in such fund prior to July 1, 1937, and all balances in such fund on July 1, 1937, are appropriated and transferred to the general fund, thus leaving the fund balanced at zero on July 1st. Then follow the provisions which are involved here. We quote:

"There is hereby appropriated from the emergency relief fund for the fiscal years beginning July 1, 1937, and July 1, 1938, the following sums of money:

"To the governor to administer relief as provided in Senate Bill No. 128 and Senate Bill No. 129 for the biennium ............$3,200,000.

"To the governor to be used under his direction in providing needed state buildings .........................$330,000.

"Said amount together with such other *funds from federal or other sources* as may be made available to use in connection therewith shall be expended as provided by *chapters 22 and 23, Laws of Utah, 1933*, as subsequently amended, and *the order of preference* in erecting public buildings shall be: 1. Carbon Junior College, *$150,000*. 2. Tuberculosis Sanatorium, *$100,000*. 3. Weber College *$80,000*. 4. *The balance such as there may be, State Prison.*" (Italics added.)

It is the second appropriation so set forth which is directly involved. The questions arise from the words I have italicized, and may be stated thus: Is the total amount to be used for Carbon College $150,000, including any federal funds which may be available, or does it mean $150,000 of state money supplemented by any federal funds which may be obtained? The same question arises as to Weber College. On the one hand it is argued that the Legislature made a definite appropriation of $150,000 from the Emergency Relief Fund to Carbon College; $100,000 to the Tuberculosis Sanatorium; and $80,000 to Weber College; and any federal funds which may be available would supplement this amount. On the other hand it is contended that the Legislature having appropriated $330,000 from the Emergency Relief Fund for four public building projects, to be used with federal or other funds which may be available, the maximum amount of the expenditure for each of the first three projects enumerated was fixed, and the balance, if any, was to go to the state prison. The three maximum grants equal $330,000 which under the first contention would leave nothing for the state prison, but under the second contention would make available for prison purposes such sum from each of the other grants as may be contributed to such buildings by the federal government or other sources. Thus, upon the rule of statutory construction that effect must be given to each word, phrase, clause, and sentence of a statutory enactment (*Smith*

v. *Lenzi*, 74 Utah 362, 279 P. 893; *Robinson* v. *Union Pac. R. Co.*, 70 Utah 441, 261 P. 9), the first construction would ignore entirely provision 4 for the state prison and necessitate a holding that the Legislature simply put that in as a joker in the bill. From the view of the act taken by both counsel, the position of counsel for the commission is probably the sounder one.

But both versions from the Attorney General's office start the discussion from a wrong premise—an erroneous reading of the act. There is no definite appropriation made to any one of these projects or buildings. From the nature of things, such could not be done and accomplish what the Legislature declared it had in mind. In the first place, the money was to come from the Emergency Relief Fund receipts commencing July 1, 1937, and extending over the biennium; secondly, there must first be taken from that fund $3,200,000 for relief during the biennium; thirdly, any expenditures for Carbon College are dependent on the condition that the taxing units of Carbon county provide a suitable campus (chapter 77, Laws of Utah 1937), and until such site was provided there could be no building for Carbon College; and, fourthly, a site was to be procured by the state for a Tuberculosis Sanatorium, and in so procuring a site the site finding commission was authorized, if needed, to extend all money appropriated in acquiring a site. Chapter 38, Laws of Utah 1937. These conditions, without pausing to enumerate many others, clearly indicate there may be many things or conditions develop which would make the expenditure of money for any of these projects impossible or impracticable and inexpedient. Appreciating these conditions, the Legislature "appropriated $330,000" to be used under the direction of the Governor "in providing needed state buildings." The buildings which the Legislature recognized as needed, and the order in which it deemed they were needed, are: (1) Carbon College, (2) Tuberculosis Sanatorium, (3) Weber College, (4) state prison. It is also indicated the amount of money, from the appropriation, which the Legislature felt would, in view of

the state finances, supply the buildings required to meet or satisfy the prior or greater need of a particular institution. The Legislature cannot appropriate, control, allot, or direct the expenditure of federal funds, except to authorize the proper state official to accept such funds and expend or co-operate in expending them under such conditions as may be fixed by the federal government. There could have been no assurance, but merely a hope, in the legislative breast that some federal funds might be obtained for some of these projects. Suppose the taxing units of Carbon county had failed to provide a suitable campus for the college, would the $150,000 lay in the vaults unused until the next session of the Legislature? Certainly not, yet this would be the result if the act were construed as contended by counsel for plaintiff as direct legislative appropriations for buildings or specific projects. But the Legislature appropriated *"To the governor to be used under his direction in providing needed state buildings. . . . $330,000 \* \* \* [to]* be expended as provided by chapters 22 and 23, Laws of Utah [Second Special Session], 1933, as subsequently amended," together "with such other funds from federal or other sources as may be made available [to the Governor] to use in connection therewith."

The appropriation therefore is made, not to specific structures or projects, but "To the governor" for use "under his direction in providing needed state buildings." This makes the appropriation and its purpose entirely practicable and feasible. The Governor first determines when such money, or any part thereof, is available for use, since the $3,200,000 for relief must first be provided. When the money or some part thereof is available, the Governor allocates it to use for one of the needed public buildings. In the event that Carbon county had provided no campus for the college, the Governor might allocate the first money to one of the other buildings. It may be that federal funds would be offered for Weber College or the sanatorium, but not for Carbon College, so the Governor would allocate the first money to such building

to make available the federal offer. If conditions precedent for an allocation were not met or the full allocation was not needed, the balances would go to the state prison. As we view the statute, no money is appropriated for either project until the Governor finds the money available and makes an allocation for such project.

In the instant case it is admitted, though perhaps not properly pleaded, that the Governor has allocated and made available for Carbon College $150,000 of state money and $123,211 of federal money, a total of $273,211; that he has allocated and made available for Weber College $80,000 state money and $65,592 of federal money, or a total of $145,592. The Legislature vested this power of allocation in the Governor. He has exercised it as provided by law, and beyond that the building commission need not look. The money is made available to it by allocation of the Governor and not by direct appropriation of the Legislature. When the Governor made the money available for use by the commission, it was and is its duty to proceed with the erection and construction of the buildings.

One other matter discussed by Mr. Chief Justice Folland requires attention. I am unable to see how the matter of the federal grants enters into the interpretation of the state statute. Certainly, our statute was not enacted by the Legislature in specific sums based upon federal grants, as the federal grants were made upon application of the executive department of the state long after the Legislature had adjourned and after the Governor had determined how much money he could and would allocate to the Carbon and Weber Colleges. The federal grants are allocations made by the Public Works Administration upon application and representation of the executive department of the state as to the project, and the amount of money the state has available. The federal grant may be evidence of the representations made by the state to the Public Works Administration, but it cannot be an element in interpreting what the Legislature meant six months earlier.

I assume that the commission, in a wise administration of its office, will proceed, if possible, in such a way as to avail itself of the money secured for its use by the state from the federal government, but if this may be considered in determining the duty of the commission, it is merely because of its duty to discharge its trust faithfully and efficiently. We said in *Board of Education* v. *Julius C. Andersen et al.,* 74 P. (2d) 681, not yet reported in State Report;

"The writ of mandamus is designed for the purpose of compelling action where the law enjoins the performance of the action as a duty and the person or tribunal whose duty is thus prescribed refuses to act in accordance with such law. No law has been called to our attention with which the defendants have refused or neglected to comply. 'The legal right to require the person or court [or tribunal] to proceed and the legal duty to do so must be free from doubt,' otherwise the remedy by writ of mandamus must be denied. *Hoffman* v. *Lewis, Judge,* 31 Utah 179, 87 P. 167, 170. 'Where the writ [of mandamus] is sought to compel action on the part of the court [officer or tribunal] the legal right to the particular action which is sought to be compelled by the writ must be clear and the legal duty to do the act or thing demanded * * * must be equally clear.' *Ketchum Coal Co.* v. *District Court of Carbon County,* 48 Utah 342, 159 P. 737, 740, 4 A. L. R. 619."

As indicated above, questions of the meaning and interpretation of the law having been raised sufficient to get into litigation, the commission did not act arbitrarily in refusing to proceed. The commissioners have declared their willingness and desire to proceed expeditiously with the construction of these buildings as soon as it is determined how much money they have available for the purpose. The question is settled by this opinion. We must assume they will do so without mandate. The alternative writ should therefore be quashed.

MOFFAT, Justice.

I concur in the opinion of Mr. Justice LARSON.