## NORVILLE v. STATE TAX COMMISSION.

No. 6082.   Decided January 10, 1940.   (97 P. 2d 937.)

*Louis H. Callister* and *Ned Warnock,* both of Salt Lake City, for plaintiff.

*Irwin Arnovitz, Grant A. Brown,* and *Alvin I. Smith,* all of Salt Lake City, for defendants.

WOLFE, Justice.

Writ of certiorari to review and set aside an order of the State Tax Commission to the County Auditor of Salt Lake County ordering him to raise the valuation of plaintiff's personal property, by including the value of certain motor vehicles which plaintiff had held within the State during the tax year for sale but which were ultimately sold at retail out of the State of Utah.

Plaintiff is engaged in the business of retailing and distributing motor vehicles. All of said vehicles are purchased by plaintiff out of the State; none is received on consignment. Some of these vehicles are sold at retail within the State but others are sent to retailers who sell them outside the State. These latter are the vehicles which plaintiff did not include in its average monthly inventory and which were ordered included by the State Tax Commission.

The order of the State Tax Commission was issued pursuant to Sec. 80-5-4, R. S. U., 1933, as amended by Chap. 98, Laws of Utah, 1937, which is set forth below:

"The county assessor must, before the 15th day of April of each year, ascertain the names of all taxable inhabitants and all property in the county subject to taxation, except such as is required to be assessed by the state tax commission, and must assess such property to the person by whom it was owned or claimed, or in whose possession or control it was, at 12 o'clock m. of the 1st day of January next preceding, and at its value on that date, *except in the case of a person who owns or has in his possession or subject to his control personal property within this state, with authority to sell it, which has been purchased either in or been consigned to him from a place out of this state for the purpose of being sold at a place within this state, in which instance the assessor must assess such property to such person, using as it[s] value, the average value of such property ascertained by taking the amount in value on hand, as nearly as possible, in each month of the next preceding calendar year in which he has been engaged in such business, adding together such amounts and dividing the aggregate amount thereof by the number of months that he has been engaged in such business during such year.* No mistake in the name of the owner or supposed owner of property renders the assessment thereof invalid. Assessors shall become fully acquainted with all property in their respective counties, and are required to visit each separate district or precinct either in person or by deputy, annually, and in person or by deputy annually to inspect the property they are required to assess. [As amended by Chap. 98, L. 1937.]" (Italics added).

The amendatory part of the statute has been italicized. It should be noted that the amendment is an addition to the section as it stood before, and no part of the prior statute was deleted or modified.

The issue arises over the words

"personal property within this state * * * which has been purchased either in or been consigned to him from a place out of this state for the purpose of being sold at a place within this state * * *."

The plaintiff contends (1) that the phrase "for the purpose of being sold at a place within the state" applies to goods purchased as well as to goods consigned. Hence,

since the Commission is insisting that goods sold out of the state be included in the average monthly assessment, it is going beyond the meaning of the very words of the statute. Plaintiff contends (2) that the statute is unconstitutional because it unreasonably and arbitrarily classifies property for the average inventory on the basis of whether or not it has been purchased in the state, whereas property purchased out of the state for sale within the state is in exactly the same situation as to an ad valorem tax. There are other contentions, but we shall consider these two first.

The Tax Commission counters with the proposition that the above language must be read as follows:

"personal property within the state which has been purchased either in or [out of the state or] has been consigned * * * *for the purpose of being sold at a place within this state* * * *"

the bracketed portion to be supplied and the italicized portion to apply only to consigned goods. If the Commission is correct, both of plaintiff's contentions fail; the asserted unconstitutional classification does not exist, and goods purchased either in or out of the state, whether for re-sale in or out of the state, by the terms of the statute, are subject to assessment on the average monthly inventory.

Statutes duly enacted by the legislature are presumed to be constitutional and valid. *Tintic Standard Mining Co.* v. *Utah County,* 80 Utah 491, 15 P. 2d 633; *Highland Boy Gold Mining Co.* v. *Strickley,* 28 Utah 215, 78 P. 296, 1 L. R. A., N. S., 976, 107 Am. St. Rep. 711, 3 Ann. Cas. 1110, affirmed in 200 U. S. 527, 26 S. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174. See 11 Am. Jur. Sec., 128 at p. 776 et seq. When there is ambiguity in the terms of a statute or when it is susceptible of two interpretations one of which would render it unconstitutional and the other bring it within constitutional sanctions, the court is bound to choose that interpretation which would uphold the statute, and to pronounce a statute unconstitu-

tional only when the case is so clear as to be free from doubt. *Highland Boy Gold Mining Co.* v. *Strickley*, supra; *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272; *Denver & Rio Grande Railroad Co.* v. *Grand County*, 51 Utah 294, 170 P. 74, 3 A. L. R. 1224; *Powell* v. *Pennsylvania*, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253; 11 Am. Jur. Sec. 92 at p. 719 et seq.

The duty of this court in construing and interpreting legislative acts is to give effect to the intent of the legislature. *State ex rel. Pincock, Sheriff* v. *Franklin*, 63 Utah 442, 226 P. 674; *Buttrey* v. *Guaranteed Securities Co.*, 78 Utah 39, 300 P. 1040; *In re Parrott's Estate*, 199 Cal. 107, 248 P. 248; *Territory ex rel. Sampson* v. *Clark*, 2 Okl. 82, 35 P. 882; *Gayler* v. *Wilder*, 10 How. 477, 13 L. Ed. 504; *Brown* v. *Duchesne*, 19 How. 183, 15 L. Ed. 595.

As stated in Sutherland on Statutory Construction, Sec. 241, at p. 320:

"In the exposition of a statute the intention of the law-maker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion."

In *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 54 S. Ct. 806, 809, 78 L. Ed. 1361, the United States Supreme Court reaffirmed what it said in *Ozawa* v. *United States*, 260 U. S. 178, 43 S. Ct. 65, 67 L. Ed. 199:

"We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail."

See also *State* v. *Livingston Concrete Bldg. & Mfg. Co.*, 34 Mont. 570, 87 P. 980, 9 Ann. Cas. 204, and *Territory ex rel. Sampson* v. *Clark,* supra [2 Okl. 82, 35 P. 883], wherein the Court said:

"When the intention [of the legislature] can be gathered from the statute, words may be modified, altered, or supplied to give to the enactment the force and effect which the legislature intended."

Moreover, in seeking to give effect to the intent of the legislature the court will adopt that interpretation of a taxing statute which lays the tax burden uniformly on all standing in the same degree with relation to the tax adopted. *In re Steehler's Estate,* 195 Cal. 386, 233 P. 972. And will avoid an interpretation which would lead to an impractical, unfair, or unreasonable result. *In re Parrott's Estate,* supra.

Tax statutes should be interpreted in connection with other tax legislation and in the light of the report of the committee which framed the statute, *Nash Sales* v. *City of Milwaukee,* 198 Wis. 281, 224 N. W. 126, and where those statutes are patterned after statutes of sister states, the interpretation given by the highest court of the sister state is presumed to prevail. *New York Jobbing House* v. *Sterling Fire Ins. Co.,* 54 Utah 394, 182 P. 361; *In re Schenk's Estate,* 53 Utah 381, 178 P. 344; *Lukich* v. *Utah Construction Co.,* 48 Utah 452, 160 P. 270; *In re Raleigh's Estate,* 48 Utah 128, 158 P. 705.

The doctrine that taxing statutes are, in case of doubt as to the intention of the legislature to be, construed strictly against the taxing authority and in favor of those on whom the tax is levied, has been well set out in the case of *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84, 55 S. Ct. 50, 79 L. Ed. 211. See, also, *Los Angeles & S. L. R. Co.* v. *Richards,* 52 Utah 1, 172 P. 474; *W. F. Jensen Candy Co.* v. *State Tax Commission,* 90 Utah 359, 61 P. 2d 629, 107 A. L. R. 261; 25 R. C. L. Sec. 307 at p. 1092;

Cooley on Taxation, Vol. 11, 4th Ed. Sec. 503 at p. 1113. But likewise, statutes exempting taxpayers from a general taxing statute are construed strictly against those seeking to escape the tax burden. *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272, 12 A. L. R. 552; *Parker* v. *Quinn*, 23 Utah 332, 64 P. 961; *In re Steehler's Estate*, supra; 25 R. C. L. Sec. 309 at p. 1093.

The general rule of construction of ambiguous words in a statute is stated in 3 A. L. R. 404:

"Where words have been omitted from a statute or an ordinance by inadvertence or through a clerical error, and the intent of the legislature is ascertainable from the context, the court will *insert* the words necessary to carry out that intent. Courts will not permit an act to be declared invalid for uncertainty, where reason demands the *insertion of words* therein." (Italics added.)

See annotations there given. In *Chez ex rel. Weber College* v. *Utah State Building Commission*, 93 Utah 538, 74 P. 2d 687, 692 this court held that "words which are obviously necessary to complete the sense [of a statute] will be supplied to effect a meaning clearly shown by other parts of the statute." See also, *Goodpaster* v. *United States Mortgage Bond Co.*, 174 Ky. 284, 192 S. W. 35; *Southern Railroad* v. *Rowland*, 152 Tenn. 243, 276 S. W. 638; and *State* v. *Taylor*, 90 Kan. 438, 133 P. 861. The case of *Commonwealth* v. *Herald Publishing Co.*, 128 Ky. 424, 108 S. W. 892, 16 Ann. Cas. 761, was a case in which two phrases were supplied in order to give meaning to an otherwise meaningless paragraph. In *Neacy* v. *Board of Supervisors of Milwaukee County*, 144 Wis. 210, 128 N. W. 1063, 1066, it was held that in construing the statute "words necessary to be supplied should be deemed to be in place by necessary or reasonable implication." See *State* v. *Crockett*, 137 Tenn. 679, 195 S. W. 583; *Johnson* v. *Baker*, 149 Tenn. 613, 259 S. W. 909; *Nichols* v. *Logan*, 184 Ky. 711, 213 S. W. 181.

For further treatment of this rule, see Endlich on the Interpretation of Statutes, Secs. 298 to 305, inclusive, and Secs. 317 to 319, inclusive. From Sec. 319 at p. 437, we read:

"A mistake apparent on the face of an act, which may be corrected by other language of the act, is never fatal. In all such cases it may, with propriety, be said that the context rectifies the error, and it is not the court that assumes to correct the legislature * * * The judicial interpreter may deal with careless and inaccurate words and phrases in the same spirit as a critic deals with an obscure or corrupt text, when satisfied, on solid grounds, from the context or history of the enactment, or from the injustice, inconvenience, or absurdity of the consequences to which it would lead, that the language thus treated does not really express the intention, and that this amendment probably does."

With the rules for judicial construction of legislative acts firmly in mind, we may proceed to a consideration of the legislative intent in enacting the statute here under consideration.

The Report of the Investigating Committee of Utah Governmental Units, October 1936, states regarding assessment of personal property, p. 107:

"It is further proposed to modify the present method of assessing the personal property of mercantile institutions. The present practice is to arrive at a valuation of the merchandise for taxation purposes based upon the inventory of December 31 of each year. Since this method of arriving at the assessed valuation has led to a practice on the part of many of the mercantile establishments of reducing their inventory to a minimum for the purpose of evading taxes, it is proposed to base the assessment in the future of all such personal property on an average monthly inventory adjusted for the rate of turnover."

Acting on this report the State Legislature passed the amendment here in question. Neither the report nor the statute made a distinction between "wholesalers" and "retailers"; all who held property in this state for sale were included.

Both parties agree that the Utah statute here in question was patterned after Sections 5381 and 5382 of the Ohio Code, Section 5381, Throckmorton's Code of Ohio, 1934, reads as follows:

"5381. A person who owns or has in possession or subject to his control personal property within this state, with authority to sell it, which has been purchased either in *or out of this state*, with a view to being sold at an advanced price or profit, or which has been consigned to him from a place out of this state for the purpose of being sold at a place within this state, is a merchant." (Italics added.)

Section 5382 provides that the goods of a "merchant" shall be assessed on an average monthly inventory basis. The Ohio statute was upheld in 1888. *Shotwell* v. *Moore*, 45 Ohio St. 632, 16 N. E. 470, affirmed 129 U. S. 590, 9 S. Ct. 362, 32 L. Ed. 827.

But, the words of the Utah statute do not exactly follow the Ohio statute, and, in their literal sense, are obviously ambiguous. "Either—or" is a coordinate conjunction and must be followed by identical or similar grammatical construction. Webster's New International Dictionary. For example, if one arm of the coordinate is followed by a noun, so must the other arm, or, if followed by a preposition, the second arm of the coordinate must also be followed by a preposition. In this case the word "either" is followed by the preposition "in," but "or" is followed by the verb "been consigned." The clause is gramatically incorrect. Some part is missing and must be supplied by inference or interpretation. It seems inescapable that the legislature intended the clause to read "which has been purchased either in or [out of the state or] been consigned to him from a place out of this state. * * *"

On the question of whether the phrase "for the purpose of being sold at a place within this state" applies to *purchased* as well as *consigned* goods, we answer in the negative. The sequence of the words in the statute—"been consigned to him * * * for the purpose of being sold * * *"—seem clearly to indicate that only consigned goods are so modified. Moreover, why should goods which are ultimately sold out of the state be exempt from the average monthly inventory requirement if their owner held them in the state during the

tax period for sale to anyone who would buy? An *owner* of goods who holds them in the state for sale, subjects them to the average monthly inventory. But goods which are *consigned* from out of the state for the purpose of sale out of the state form a class of goods at rest in a total interstate commerce movement. Their origin is out of the state as is their predetermined destination. Only those *consigned* goods which are held *to be sold within the state* are assessed on the average monthly inventory. The statute makes no provision for average monthly assessment of goods consigned from within the state because they are assessed to the consignor-owner.

With the bracketed words supplied, Chap. 98 follows the wording of the Ohio statute after which it was patterned; the ambiguity of its language is eliminated; the statute is given meaning and purpose in accord with the object set forth in the legislative committee report; and the tax burden is laid uniformly on all who hold personal property in this state for sale. These factors compel the conclusion that the clear intent of the legislature was to include these words in the statute.

What has been said above disposes of plaintiff's contention that the statute as interpreted is so vague and uncertain as to be inoperative. It appears that the Tax Commission has properly interpreted and applied the statute. Plaintiff also contends that Sec. 80-5-4, R. S. U. 1933, as amended by Chap. 98, Laws of Utah 1937, applies only to retailers. There is nothing in the Act which confines it to retailers.

The order of the Tax Commission is affirmed.

McDONOUGH and PRATT, JJ., concur.

LARSON, Justice.

I agree that to make the statute intelligible and give it any sensible meaning it would be necessary to make the emendation therein made by Mr. Justice WOLFE. I also

agree that where there are grammatical errors in a legislative enactment, either from placing a phrase in a sentence out of its proper order, or by the omission of a phrase from a sentence, where the meaning is clear and evident the court should transpose or supply the phrase rather than render the enactment void.

I do not agree that all goods purchased without the state are necessarily included within monthly inventory. I think all goods, which at the time of purchase, are definitely intended for out of state sale and are sold out of the state, are not subject to be included in monthly inventory for tax purposes. For example, should Norville receive from his retailer in Nevada an order for certain cars for March delivery, and Norville buys those care from Studebaker Corporation for that order, but the cars arrive in Salt Lake City on January 10 and are held here until late in February to fill the Nevada order, such cars are not be included in monthly inventory for tax purposes in January or February if they ultimately go to Nevada. But if Norville buys a car for sale anywhere within his district where he might in time find a sale for it, such car is purchased for sale within the state and is subject to inclusion in inventory, even though it may ultimately be sold outside of the state.

MOFFAT, Chief Justice.

I dissent.