# STRICKLEY *v.* HIGHLAND BOY GOLD MINING COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 172. Argued January 25, 1906.—Decided February 19, 1906.

If a state statute as construed by the highest court of the State is constitutional this court will follow that construction.

There is nothing in the Fourteenth Amendment which prevents a State in carrying out its declared public policy from requiring individuals to make to each other, on due compensation, such concessions as the public welfare demands; and the statute of Utah providing that eminent domain may be exercised for railways and other means to facilitate the working of mines is not unconstitutional. *Clark* v. *Nash*, 198 U. S. 361, followed.

The facts are stated in the opinion.

*Mr. Arthur Brown* and *Mr. Frank Hoffman* for plaintiffs in error:

The construction of this tramway was not a matter of public necessity, but it was constructed solely for the purpose of reducing to a minimum the cost of transporting the defendant in error's ores from its mines to the depot. The only use to which this tramway is put is for the transportation of the ores of the defendant in error. The public is in no manner interested in it, nor does the public derive any benefit from the same. In the very nature of its construction and in the manner of its operation, no passengers can be carried over the tramway, nor does it receive, transport or deliver any freight of any kind or description. The defendant has not even the excuse that it is necessary or a matter of necessity that this tramway was built for the operation of its mines. Its only claim is that it is a matter of convenience and the sole object and purpose of its construction was to save a few cents a ton in the cost of transporting its ores.

The taking in this case was for a private use, and contrary

to the provisions of the Fourteenth Amendment. *Consolidated Channel Company* v. *Central Pacific Railroad Co.*, 51 California, 269; *People* v. *Pittsburgh &c. Railroad Co.*, 53 California, 694; *Sholl* v. *German Coal Co.*, 118 Illinois, 429; *Nesbit* v. *Trumbo*, 29 Illinois, 110; *Bankhead* v. *Brown*, 25 Iowa, 540; *Edgewood Railroad Co.'s Appeal*, 79 Pa. St. 257; *Coster* v. *Tidewater Company*, 18 N. J. Eq. 54; Kent's Commentaries, vol. 2, p. 339; Lewis on Eminent Domain, § 165; Mills on Eminent Domain, §§ 23, 26, 27.

Under all of the authorities cited, no legislature or court has the authority to take property from A and give it to B, when it is as apparent as it is in this case that the only object that can be accomplished by such transfer is to enable B to more successfully conduct the same business that A is conducting, and to condemn A's property to the use of B for the same purposes for which A has already appropriated it, and especially is this so where the only benefit to be derived is that B may more successfully, economically and conveniently conduct mining enterprises.

*Mr. George Sutherland*, with whom *Mr. Waldemar Van Cott* and *Mr. E. M. Allison, Jr.*, were on the brief, for defendants in error:

This court has no jurisdiction. The constitutional question was not specially set up or claimed. Rule 21; § 709, Rev. Stat.; *Morrison* v. *Watson*, 154 U. S. 115; *Bolln* v. *Nebraska*, 176 U. S. 90.

In order to determine whether a particular use is a public one, it is first necessary to ascertain whether such use furthers the general public policy of the State and contributes to the public welfare.

Utah is crossed by great mountain ranges. Long, narrow valleys lie between these ranges and it is impossible for mines in these mountains to be furnished with railway facilities, but it is practicable to construct aerial tramways.

One of the great public uses of Utah, namely, irrigation, has

been judicially declared to be a public use.  *Clark* v. *Nash*, 198 U. S. 361.  No less important to the public policy and general welfare of the State of Utah is the development of its mineral resources.  The legislature of Utah has declared the great public necessity of developing the mineral wealth of the State. The legislature has declared that it is a public use to construct aerial tramways for the development of its mineral resources. The District Court and the Supreme Court of Utah have declared in this case that under the statute so providing the construction of aerial tramways for the development of mineral resources is a public use.  See also *Fall Brook Irrigation Dist.* v. *Bradley*, 164 U. S. 112.

The legislative declaration of a public use will be respected by the courts, unless such declaration is clearly without reasonable foundation.  *United Sates* v. *Gettysburg Electric Ry. Co.*, 160 U. S. 668; *Backus* v. *Fort Street Ry. Co.*, 169 U. S. 568.

A public use is not determined simply by the question whether a physical use is made by the public; but the question is deeper and depends upon whether the use subserves the public good or tends to that end.  *Olcott* v. *Supervisors*, 16 Wall. 694; *Gibson* v. *Mason*, 5 Nevada, 308; *Munn* v. *Illinois*, 94 U. S. 113.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding begun by the defendant in error, a mining corporation, to condemn a right of way for an aerial bucket line across a placer mining claim of the plaintiffs in error.  The mining corporation owns mines higher up in Bingham Canyon, in West Mountain Mining District, Salt Lake County, Utah, and is using the line or way to carry ores, etc., for itself and others from the mines in suspended buckets down to the railway station, two miles distant and twelve hundred feet below.  Before building the way it made diligent inquiry but could not discover the owner of the placer claim

in question, Strickley standing by without objecting or making known his rights while the company put up its structure.. The trial court found the facts and made an order of condemnation. This order recites that the mining company has paid into court the value of the right of way, as found, and costs, describes the right of way by metes and bounds and specifies that the same is to be used for the erection of certain towers to support the cables of the line, with a right to drive along the way when necessary for repairs, the mining company to move the towers as often as reasonably required by the owners of the claim for using and working the said claim. The foregoing final order was affirmed by the Supreme Court of the State. 78 Pac. Rep. 296. The case then was brought here.

The plaintiffs in error set up in their answer to the condemnation proceedings that the right of way demanded is solely for private use, and that the taking of their land for that purpose is contrary to the Fourteenth Amendment of the Constitution of the United States. The mining company on the other hand relies upon the statutes of Utah, which provide that "the right of eminent domain may be exercised in behalf of the following public uses: . . . (6) Roads, railroads, tramways, tunnels, ditches, flumes, pipes and dumping places to facilitate the milling, smelting or other reduction of ores, or the working of mines." In view of the decision of the state court we assume that the condemnation was authorized by the state laws, subject only to the question whether those laws as construed are consistent with the Fourteenth Amendment. Some objections to this view were mentioned, but they are not open. If the statutes are constitutional as construed, we follow the construction of the state court. On the other hand, there is no ground for the suggestion that the claim by the plaintiffs in error of their rights under the Fourteenth Amendment does not appear sufficiently on the record. The suggestion was not pressed.

The single question, then, is the constitutionality of the

Utah statute, and the particular facts of the case are material only as showing the length to which the statute is held to go. There is nothing to add with regard to them, unless it be the finding that the taking of the strip across the placer claim is necessary for the aerial line and is consistent with the use of all of the claim by the plaintiffs in error for mining, except to the extent of the temporary interference over a limited space by four towers, each about seven and a half feet square and removable as stated above.

The question thus narrowed is pretty nearly answered by the recent decision in *Clark* v. *Nash*, 198 U. S. 361. That case established the constitutionality of the Utah statute, so far as it permitted the condemnation of land for the irrigation of other land belonging to a private person, in pursuance of the declared policy of the State. In discussing what constitutes a public use it recognized the inadequacy of use by the general public as a universal test. While emphasizing the great caution necessary to be shown, it proved that there might be exceptional times and places in which the very foundations of public welfare could not be laid without requiring concessions from individuals to each other upon due compensation which under other circumstances would be left wholly to voluntary consent. In such unusual cases there is nothing in the Fourteenth Amendment which prevents a State from requiring such concessions. If the state constitution restricts the legislature within narrower bounds that is a local affair, and must be left where the state court leaves it in a case like the one at bar.

In the opinion of the legislature and the Supreme Court of Utah the public welfare of that State demands that aerial lines between the mines upon its mountain sides and the railways in the valleys below should not be made impossible by the refusal of a private owner to sell the right to cross his land. The Constitution of the United States does not require us to say that they are wrong. If, as seems to be assumed in the brief for the defendant in error, the finding that the plaintiff

is a carrier for itself and others means that the line is dedicated to carrying for whatever portion of the public may desire to use it, the foundation of the argument on the other side disappears.

*Judgment affirmed.*