THE COMMONWEALTH OF PUERTO RICO, ETC., Plaintiff and Appellee, v. FAJARDO SUGAR COMPANY ET AL., Defendants and Appellant, the former.

No. 11593. Argued November 9, 1955.—Decided May 31, 1956.

---

*Sifre & Ruiz Suria* for appellant. *José Trías Monge, Attorney General,* and *V. M. Sánchez Fernández, Assistant Attorney General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Commonwealth of Puerto Rico brought an action to condemn a parcel of land of 2.089 cuerdas situated in the ward of Martín González of the municipality of Carolina, owned by the Fajardo Sugar Company. The action was brought at the instance of the Puerto Rico Industrial Development Company, "for the purpose of acquiring the property for the use and benefit of the latter . . . , under the authority of Act No. 188, approved May 11, 1942 (Sess. Laws, p. 934), as amended by Act No. 99, approved April 18, 1952 (Sess. Laws, p. 188), and the General Law of Eminent Domain. . . ."

The complaint alleges that the Puerto Rico Economic Development Administrator had deemed it useful, necessary, and advisable, in order to carry out the purposes of the Puerto Rico Industrial Development Company, to acquire the property in question and, specifically, to devote it to the construction of an industrial building; that its acquisition is of public necessity and utility, inasmuch as it complies with the purpose of the Industrial Development Company of providing new sources of employment and wealth in the Commonwealth of Puerto Rico through a program of industrialization.

Plaintiff deposited in the office of the secretary of the lower court the amount of $6,419.68, which in its opinion was the just and reasonable compensation for the property involved in the action, and, at its request, the court entered an order vesting it with dominion title and granting to the defendant a period of 20 days to deliver the property in question.

The defendant then filed a motion to set aside the order and praying that the possession of its parcel be restored to it, alleging that from the face of the complaint it appeared that the purpose for which the property was condemned was

not a public purpose within the meaning of the applicable constitutional provisions. The motion having been denied, the defendant answered denying the essential facts of the complaint and alleging that the condemned parcel was a part of an industrial unit owned by the defendant known as Central Victoria; that the defendant needed the parcel in question for the development and expansion of the said industrial unit, namely, to erect certain facilities; that the just and reasonable value of the condemned parcel was $25,068, and that the condemnation caused special damages aggregating $8,950. As special defenses, it alleged (1) that Act No. 99 of April 18, 1952 is unconstitutional and void, as being contrary to the provisions of Art. II, § 9, of the Constitution of the Commonwealth of Puerto Rico, and (2) that the purpose for which the property in litigation is condemned is not a public purpose.

After a trial on the merits, the lower court made findings of fact and conclusions of law on which it based judgment decreeing: (1) that the full dominion title to the property was vested in the Commonwealth of Puerto Rico; (2) that the just compensation payable to the defendant is the sum of $8,356; (3) that the Central Victoria, Inc. had no interest in the proceeding; and (4) ordering plaintiff to deposit in court an additional sum of $1,936.32, plus interest thereon, to complete the total amount of the just compensation payable to the defendant.

On appeal, defendant Fajardo Sugar Company charges the trial court with the commission of eight errors.

In the first and seventh assignments appellant attacks the constitutionality of Act No. 99 *supra*. In this connection, it invokes § § 7 and 9 of Art. II of the Constitution of the Commonwealth of Puerto Rico, the first of which provides that "the right to life, liberty and the enjoyment of property is recognized as a fundamental right of man," and the latter that "private property shall not be

taken or damaged for public use except upon payment of just compensation and in the manner provided by law." [1] It then cites § 8 of the Political Code (1 L.P.R.A. § 5), which gives power to the Government of Puerto Rico to acquire or authorize others to acquire title to property, real or personal, for public use; and § 282 of the Civil Code (31 L.P.R.A. § 1113), which likewise provides that no person shall be deprived of his property except it be by a competent authority and for a justified purpose of public utility.

Let us first examine Act No. 99, which is the object of the constitutional attack. This Act contains the following:

"STATEMENT OF MOTIVES

"The industrialization of Puerto Rico to its maximum capacity and the speediest acceleration possible is an important part of the policy of the Government of Puerto Rico as a practical means of providing new sources of employment and wealth for the increasing population of the island.

"To the end of attaining that objective, an adequate and well planned distribution of industrial plants throughout the Island becomes necessary and for such purpose it is necessary to facilitate the acquisition of those lands which the Puerto Rico Planning Board may deem it advisable to allot or approve for industrial purposes, with the rapidity which the adequate momentum of the industrial development program may demand and upon payment for such lands at a reasonable price, not subject to speculation on the part of the owners thereof.

"One of the most serious problems which the Puerto Rico Industrial Development Company is confronting in the develop-

---

[1] Section 9 of Art. II of the Constitution of the Commonwealth of Puerto Rico reads as follows:

"Section 9.—Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law. No law shall be enacted authorizing condemnation of printing presses, machinery or material devoted to publications of any kind. The buildings in which these objects are located may be condemned only after a judicial finding of public convenience and necessity pursuant to procedure that shall be provided by law, and may be taken before such a judicial finding only when there is placed at the disposition of the publication an adequate site in which it can be installed and continue to operate for a reasonable time."

ment of its said industrialization program is precisely the difficulty encountered in acquiring by purchase through direct negotiation the lands needed by it therefor, mostly due to apathy or to the express refusal to sell on the part of the owners, and in other cases, because of difficulties in reaching an agreement with them as regards reasonable prices for said lands.

"The Legislature of Puerto Rico, conscious of the importance the success of the intensified industrialization program sponsored by the government through the Industrial Development Company entails to the economic life of all Puerto Rico, desires to declare, as it hereby declares, that said program is one of prime importance in the economic reconstruction of the island, and that, therefore, it participates of the nature of a public utility and necessity.

"For such reason, and in order to enable the said government agency to fulfill that mission of the utmost public interest with the required rapidity, efficacy and efficiency, the Legislature of Puerto Rico feels that it is its duty expressly to grant hereby to the Puerto Rico Industrial Development Company, through the pertinent amendments to its organic Act, the necessary powers to enable said agency to acquire by condemnation those properties which in its judgment are required in order fully to develop its activities within its aforesaid program."

On the basis of this Statement of Motives, Act No. 99 amended § 10 [2] of Act No. 188 of May 11, 1942, which created the Puerto Rico Industrial Development Company, so as to amend par. (*g*) and add the new pars. (*n*), (*o*), and (*p*). (23 L.P.R.A. § 278.) By par. (*g*), as amended, the Industrial Development Company is empowered to acquire by condemnation, among other means, such property as it may deem necessary or desirable for carrying out the purposes of the Company, subject to the limitation that the condemnation shall not apply to the acquisition of buildings wherein enterprises of a commercial, industrial, or agricultural nature are being operated in good faith. By par. (*n*), the Governor of Puerto Rico is vested with power, in behalf of the Common-

---

[2] This section was thereafter renumbered § 8 by virtue of Act No. 456 (Sess. Laws, p. 950), approved May 14, 1952.

wealth of Puerto Rico and at the request of the Company, to acquire by condemnation, among other means, the property necessary and convenient for carrying out the ends and purposes thereof.

By par. (o) "All real and personal property and all rights or interests therein which the Company may deem necessary to acquire for carrying out its purposes, are hereby declared of public utility and the same may be condemned by the Company, or at the request and for the use and benefit thereof, by the Commonwealth of Puerto Rico, represented by the Governor, without the previous declaration of public utility provided in section 2 of the General Law of Eminent Domain. . . ."

Paragraph (p) provides that condemnation proceedings instituted by virtue of the provisions of paragraphs (g), (n), and (o), supra, shall be carried out in accordance with the provisions of the General Law of Eminent Domain of March 12, 1903, as amended.

Appellant's attack is directed at the power of condemnation granted by Act No. 99, supra, to the Industrial Development Company.[3] The gist of its contention is that under Act No. 99, supra, the power to condemn may be exercised to take the private property from a person for the purpose of selling it to another person, namely, to a private interest. In this connection, it contends that for the development of the industrialization of Puerto Rico it is not absolutely necessary for the Industrial Development Company to exercise the power to condemn; that this is evidenced by the fact that the Company was operated for over 10 years without the power to condemn and during that time acquired lands for industrial purposes; that it is not unconstitutional for the Development Company to buy lands, erect thereon industrial plants, and afterwards sell, lease, or dispose of them

---

[3] The original Act which created the Industrial Development Company did not vest it with power to acquire property by condemnation proceedings. (23 L.P.R.A. § 279.)

in favor of third private persons; but that it is contrary to the Constitution to exercise the power to condemn for such purposes, namely, to take compulsorily private property from a citizen in order to give it to others without absolute necessity therefor.

However, appellant agrees that it is generally recognized that the phrase "public use," when considered in relation to the power of eminent domain, is not susceptible of a precise definition (2 Nichols, *Eminent Domain*, § 7.2 (1), p. 429) ; that in the interpretation of this phrase, the most liberal view gives it a broad concept and considers it as equivalent to "public benefit"; [4] but it maintains that this view is to be applied strictly to particular types of cases, citing to that effect those enumerated in Nichols on *Eminent Domain*.[5] 'There exist, in our opinion" —says appellant— "in addition ⁺o the cases enumerated in the foregoing citation of Nichols, others in which the 'public benefit' rule could be invoked as slum clearance, flood control, etc., but all of them when the power of eminent domain, because of the special attendant circumstances, is the only means of achieving the benefit

[4] In Puerto Rico we have followed the liberal view of accepting the meaning of the phrase "public use" as synonymous with "public benefit." *McCormick* v. *Marrero, Judge,* 64 P.R.R. 250; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. 2d 316, *cert. denied,* 329 U.S. 772; *People* v. *Saldaña,* 69 P.R.R. 663.

[5] This citation is the following:

"The cases cited in the foregoing sections amply support the rule laid down by Judge Cooley that it is not legitimate legislation to assist one form of private enterprise at the expense of others, but the exceptions to the rule are so numerous that many have questioned the existence of the rule. *However, a study of the history of the exceptions and of the conditions by which they have been brought into being, leaves one's faith in the existence of the rule itself, and its application under normal conditions, unimpaired.*

"Manufacture, trade and agriculture can be and ordinarily are carried on without the aid of eminent domain or of any other franchise from the state; but there are certain forms of assistance to private enterprise and certain methods of improving private land which have been authorized by law since the first settlement of this country and which, while not involving the seizure and occupation by one person of another's entire estate as a site for the former's works, nevertheless interfere with private

sought. This is the distinction that we see, for example, between the case of *McCormick* v. *Marrero, Judge,* 64 P.R.R. 250 . . . and the case under consideration." Appellant next maintains that the same distinction exists between the present case and that of *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. 2d 316.

We disagree. The main objective of Act No. 99 of 1952 is the industrialization of Puerto Rico to its maximum capacity and with the speediest acceleration possible, for the purpose of providing new sources of employment and wealth for its increasing population. The Legislature declared that in order to attain that objective, an adequate and well-planned distribution of industrial plants throughout the Island was necessary, and that for such purpose it was necessary to facilitate the acquisition of those lands which the Puerto Rico Planning Board may deem advisable to allot or approve for industrial purposes. (Statement of Motives of Act No. 99.) In order to obviate those difficulties which obstructed the development of the industrialization program, and considering it of vital importance for the economic life of all Puerto Rico, the Legislative Assembly declared "that said program

---

property rights in a manner not ordinarily justified except as an exercise of eminent domain, and yet through the sanction of long established and unopposed practice, have been tolerated until the present time.
" . . . . . . .

"Whether the use is based on historical grounds or on abnormal local conditions, as set forth in the preceding section, and whether the same be in aid of manufacturing trade or agriculture, there are certain well-defined uses, private though their essential character may be, which in the course of time have come to be recognized as proper objects in aid of which the power of eminent domain may be exercised.
"Such private uses include the following:
 "(a) Irrigation,
 "(b) Drainage,
 "(c) Reclamation of wet land,
 "(d) Mills and milldams,
 "(e) Mines and mining,
 "(f) Lumbering and logging,
 "(g) Private roads,
 "(h) Clearing a doubtful title."
(2 Nichols, *Eminent Domain,* §§ 7.61 and 7.62, pp. 565-68.)

is one of prime importance in the economic reconstruction of the Island, and that, therefore, it participates of the nature of a public utility and necessity." Consequently, it empowered the Industrial Development Company to acquire property by condemnation for the full development of its activities within the aforesaid program.

Considering the Legislature's wide scope to determine what takings are for public use and the right or deference to which its decision is entitled until it is shown to involve an impossibility, which appellant has not done here, we must conclude that Act No. 99 does not violate the Constitution. We must not overlook the fact that when the Constitutional Convention employed in § 9, Art. II of our Constitution, the phrase "public use," which is the same phrase employed in the Constitution of the United States and in our former Organic Act in connection with the power to condemn, it did so in order to preserve the meaning already given to that phrase by the judicial decisions. See Journal of Sessions of the Constitutional Convention, p. 588, Session of January 4, 1952.[6] But there is more. The Constitutional Convention interpreted the said § 9 of Art. II as not obstructing in any manner whatever the industrialization program of Puerto Rico, whether its development was undertaken by private initiative or by government participation.[7]

---

[6] By this date the decisions in *McCormick* v. *Marrero, Judge, supra; People of Puerto Rico* v. *Eastern Sugar Associates, supra;* and *People* v. *Saldaña, supra,* had already been handed down.

[7] The Committee which studied and drafted the Bill of Rights submitted to the consideration of the Constitutional Convention § 9 of Art. II, which read as follows:

"Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law. No law shall be enacted authorizing condemnation of printing presses, machinery or material devoted to publications of any kind. The buildings in which these objects are located may be condemned only after a judicial finding of public convenience and necessity pursuant to procedure that shall be provided by law, and may be taken before such a judicial finding only when there is placed at the disposition of the publication an adequate site in which it

Appellant admits, and in this we are agreed, that the industrialization program developed by the Government through the Industrial Development Company "is a program of great magnitude and of great public benefit for the Island." The fact that in the development of that program those private persons or entities to which the properties taken are sold or leased receive some benefit or utility, is purely incidental to the public purpose sought by the law. It can not be maintained that the belief of the Legislature of Puerto Rico that the lack of wealth and employment constitutes a serious economic and social problem is arbitrary, nor can it be denied that the creation of new industries and their adequate distribution throughout the Island involve means reasonably calculated to deal with the problem.

Regarding the point under discussion, it is difficult to draw the line between this case and those of *McCormick* v. *Marrero, supra; People of Puerto Rico* v. *Eastern Sugar Associates, supra;* and *People* v. *Saldaña, supra.* In the *Eastern Sugar Associates* case defendants' argument was rejected "that due process is denied because the only purpose for taking appellees' land is to sell or lease it to others in-

---

can be installed and continue to operate for a reasonable time. The rules of taxation in Puerto Rico shall be uniform. Public funds and property shall be used only for public purposes and for the maintenance and support of government institutions. *Those purposes or institutions which are not under the authority and intervention of the government shall not be considered public.* No law shall be passed impairing the obligations of contracts." Journal of Sessions of the Constitutional Convention of Puerto Rico, p. 587. (Italics ours.)

The provision that "those purposes or institutions which are not under the authority or intervention of the government shall not be considered public," was eliminated upon recommendation of the Chairman of the Committee, who stated, in proposing the amendment, as follows: "Having clarified this situation, it seems unnecessary to adopt this additional clause since by its elimination the government and the Legislature are left free to adopt those measures which may be necessary to achieve the public purposes in cooperation or in the development of the industry, etc." (Journal of Sessions of the Constituent Committee, p. 587, 3d column.) Delegate Trías Monge queried the Chairman of that Committee as follows:

stead of for a general public use." In that case it was stated:

"The argument is made that due process is denied because the purpose for taking the appellees' land is only to sell or lease it to others for them to use personally instead of for use by the general public. This argument has been advanced several times in the Supreme Court of the United States in cases of this sort and every time it has been rejected. In *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 162, 17 S. Ct. 56, 64, 41 L. Ed. 369, decided in 1896, the Supreme Court considered the argument fully and in the light of that consideration announced that 'It is not necessary, in order that the use should be public, that every resident in the district should have the right to the use of the water.' It was considered, and rejected again in *Clark* v. *Nash,* 1905, 198 U. S. 361, 367, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171 *et seq.,* and in *Strickley* v. *Highland Boy Mining Co.,* 1906, 200 U. S. 527, 531, 26 S. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; and in 1916 in *Mt. Vernon Cotton Co.* v. *Alabama Power Co.,* 240 U. S. 30, 32, 36 S. Ct. 234, 236, 60 L. Ed. 507, Mr. Justice Holmes speaking for a unanimous court said: 'The inadequacy of use by the general public as a universal test is established.' Then later in 1923 in *Rindge Co.* v. *Los Angeles, supra,* page 707 of 262 U. S., 43 S. Ct. 692, 67 L. Ed. 1186, the Supreme Court said: 'It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in any improvement in order to constitute a public use.'

---

"Q.—Specifically, does this provision, as amended by the elimination which you propose, affect any phase of the development of the programs—industries, specifically, the Puerto Rico Industrial Development Company?

"A.—This is in no way affected; on the contrary, we wish to state clearly that one of the reasons for the elimination is to dispel any doubt on this point.

"Q.—Does it also permit the development of investment programs and the development of investments by the Governmental Bank of Puerto Rico?

"A.—Yes, indeed.

"Q.—Does it not affect in some way the activities of the industrial development of Puerto Rico, either by private initiative or by government participation?

"A.—Not at all; such is not the purpose." (Journal of Sessions of the Constitutional Convention of Puerto Rico, p. 587, 3d column.)

"It does not follow from this, however, that a taking of property from one, for the purpose of transferring it to another, without anything more, conforms to due process of law. Some public benefit or advantage must accrue from the transfer and mere financial gain to the taker is not enough, since the Supreme Court has intimated that the power of eminent domain cannot be used by the taking authority in aid of 'an outside land speculation.' *Brown* v. *United States,* 263 U. S. 78, 84, 44 S. Ct. 92, 94, 68 L. Ed. 171.

"But the local Legislatures nevertheless have wide scope in deciding what takings are for a public use. This is definitely established by the cases arising under the Fourteenth Amendment already cited and by many more. In the first place a state's power of eminent domain does not necessarily have to be rested upon the ground that the taking is considered necessary for the public health, but may be exercised if the taking 'be essential or material for the prosperity of the community.' [Citations] And in the second place a local Legislature, because of its intimate knowledge of local conditions, has great latitude in determining what uses of land are conducive to community prosperity. The wide scope allowed a state Legislature in this respect is emphasized in *Clark* v. *Nash, supra,* and in *Cincinnati* v. *Vester,* 281 U. S. 439, 446, 50 S. Ct. 360, 362, 74 L. Ed. 950, decided in 1930, the Supreme Court, citing many cases, said that although the question of what is a public use is a judicial one 'In deciding such a question, the Court has appropriate regard to the diversity of local conditions and considers with great respect legislative declarations and in particular the judgments of state courts as to the uses considered to be public in the light of local exigencies.' In fact, in *Old Dominion Co.* v. *United States,* 269 U. S. 55, 66, 46 S. Ct. 39, 40, 70 L. Ed. 162, cited with approval in *United States, ex rel. Tennessee Valley Authority* v. *Welch, supra,* the Supreme Court said that a legislative decision that a given use is public 'is entitled to deference until it is shown to involve an impossibility.' " (*People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. 2d 316.)

 The second and sixth assignments are to the effect that the lower court erred in weighing the evidence and in declaring that the condemnation in this case is for a public use or purpose.

The same argument is adduced here that the use for which the parcel in litigation is taken is a private use, inasmuch as the Industrial Development Company will not make direct use of the parcel nor of the building erected thereon, but the one who will use it directly is the industrialist to whom it is sold or leased for the purpose of establishing an industry. We believe this argument has already been answered. Appellant insists, however, that according to the more liberal rule of "public benefit," such purpose is not a "public use" unless it is absolutely necessary, and that in this case the Government should have proved, but did not, that it was unable to obtain other lands by direct purchase.

We disagree. The Legislature declared of public utility the property which the Development Company may consider necessary to acquire in order to effectuate its purposes. The function of deciding what type of taking is for public use rests primarily with the Legislature. *United States ex rel T.V.A.* v. *Welch*, 327 U. S. 546, 551, and 552. The presumption is that a use is public if it has been so declared by the Legislature, and the question before us is whether the Legislature could have reasonably considered the use as public, and this has already been answered in the affirmative. We know that in the last instance the determination of whether a particular use is public is one for the courts. This determination will be made considering the special circumstances of each case, and in view of the circumstances present in this case we must conclude that the use for which appellant's parcel was taken is a public use. The Legislature has deemed that the industrialization of the Island will alleviate, in part if not entirely, Puerto Rico's economic problem. In order to establish industries, it created the Industrial Development Company and vested it with extraordinary powers of condemnation. It is true that this Company acquires lands and erects industrial plants thereon which it thereafter sells or leases to private persons or entities; but according to the statements made by the acting

head of that Company, the main purpose is not the profit which the enterprise may receive as a private enterprise but the profit derived from the establishment of the industry in the general economy of the country, and that the effort made by the Development Company to provide industrial facilities is due to the fact that otherwise the prevailing economic and social problems would remain unsolved.

It is not essential that the entire community should directly enjoy or participate in any improvement in order to constitute a public use under the Law of Eminent Domain, and in determining whether the use is public not only the present demands of the public, but also those which may be fairly anticipated in the future, may be considered. *Rindge Co.* v. *Los Angeles County*, 262 U. S. 700, 707. In the development of a public project of such vast scope and consequences as is the industrialization program of the Island of Puerto Rico,[8] the taking of the lands necessary to carry it out, even if their immediate use is a private use, would not warrant a decision that such takings are for private use.

". . . However, an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. Where, despite the commingling of private and public uses, the taking will aid in the establishment of a public project, the courts are disposed

---

[8] In connection with the industrialization program, see also the Act which created the Industrial Development Company, No. 381 of May 8, 1951 (Sess. Laws, p. 926), appropriating to that Company the sum of $400,000 for the payment of special assistance and incentives to private industrial enterprises; Act No. 382 of May 9, 1951 (Sess. Laws, p. 928), authorizing municipalities and the Government of the Capital to acquire real property to construct industrial buildings and to rent and sell them to industrialists without the need of complying with the provisions of the Municipal Law; Act No. 377 of May 8, 1951 (Sess. Laws, p. 914), appropriating to the Industrial Development Company of Puerto Rico the sum of $8,300,000 to carry out its industrialization program. A like sum was appropriated by Act No. 374, approved May 10, 1952 (Sess. Laws, p. 738); Act No. 184, approved May 13, 1948 Sess. Laws, p. 482), as amended by Act No. 243 of May 8, 1950 (Sess. Laws, p. 630), provided the incentive of temporary tax exemption to new industries.

to ignore the private element as purely incidental; and in any event, where such uses are not so commingled as to be inseparable, the authorizing statute will be upheld." 2 Nichols, *Eminent Domain,* sec. 7.2222[4].

Neither were these errors committed.

■ In the third assignment appellant maintains that plaintiff in this case did not comply with the legal provisions on which the taking was based. These provisions are pars. (*n*) and (*o*) of § 10, now § 8 of the Act creating the Industrial Development Company of Puerto Rico. Its contention is that since the parcel taken will be sold by the Development Company at cost or leased to an industrialist, who will be the one to derive the benefits, the condemnation has not been made for the *use* and *benefit* of that Company as required by par. (*n*), *supra.* Appellant is not correct. Paragraph (*n*), *supra,* provides that when in the judgment of the Development Company it should be necessary to take immediate possession of the properties to be condemned, the Company shall request the Governor of Puerto Rico to acquire, in behalf of the People of Puerto Rico, and the latter shall be empowered to acquire, by purchase, condemnation, or by any other lawful means, "for the use and benefit of the Company, all real property and property rights necessary and convenient for carrying out the ends and purposes thereof." These ends and purposes are set forth in the following legislative declaration:

"It is the intention of the Legislature that the activities of the Company in the above-mentioned respects, as well as the activities to which subsequent sections refer, are to benefit the inhabitants of Puerto Rico by discovering and developing to the fullest possible extent the human and economic resources of the Commonwealth, as a part of the financial reconstruction plan for the general benefit of the people of Puerto Rico which the latter, as regards its industrial aspect, puts into practice through the Company." Section 3 of the Act creating the Puerto Rico Industrial Development Company. (23 L.P.R.A. § 273.)

As rightly argued by the appellee, if we construed the law as appellant did, the purposes for which the Development Company was created would be subverted. The use and benefit referred to in the law is the disposition made by the Company of the properties taken in order to render feasible the development of the industrialization program, the main objective of which was the economic reconstruction for the general benefit of Puerto Rico. Hence, in the Declaration Regarding the Acquisition and Material Delivery of Property, signed by the Governor, it was stated as follows:

"1. That the property involved in this condemnation proceeding is acquired by the Commonwealth of Puerto Rico, at the request and for the use and benefit of the Industrial Development Company of Puerto Rico, to enable the latter to effectuate the purpose of devoting the same to the construction of an industrial building in the ward of Martín González of Carolina, which will provide new sources of employment and wealth to the Commonwealth of Puerto Rico through its program of industrialization. . . ."

The error assigned was not committed.

■ The fourth error assigned by appellant is that it was not permitted to prove the special damages claimed in the answer. In par. 6 of the answer it is alleged that the property involved in the condemnation proceeding is part of an industrial unit owned by defendant which it needed for certain facilities, and that as a result of the condemnation it would be compelled to erect those facilities in another less adequate site at a cost of $8,950. Damages are claimed in this sum.

Its contention was, according to the testimony of witness Ramón Ramos, Jr., that appellant proposed to devote the parcel taken to a parking area for trucks, in view of the fact that the number of *colonos* had increased as well as the movement of trucks; that the parcel taken was part of the

Central's *batey* and that, logically, it was the most convenient and less costly site for the establishment of the parking area.[9]

After the witness testified amply on this point on direct and cross-examination, the lower court ordered the exclusion of his testimony on the ground that the damages claimed were speculative and, hence, not compensable.[10] The court said:

"Hon. Judge: Well, after hearing the witness' testimony the court will decide the question once and for all. According to the witness' testimony, this question involved future plans to increase the efficiency of the traffic. The taking in this case was made on October 17, 1952, or after the 1952 crop season had terminated. I take judicial notice that the 1953 season, from January to June 1953, terminated—isn't that right?— four months after the parcel was taken. The contingency calling for this change occurred when the Central San José was sold or dismantled, and that is why the traffic increased, the number of trucks of the Central Victoria increased because the latter absorbed what the Central San José was unable to grind. That was during the 1953 crop season, after the parcel had already been taken. We therefore fail to see how the condemnation of the parcel in 1952, when the necessity of devoting that area to parking had not yet arisen, could have affected the value of the parcel and caused actual damages to the defendant. For that reason, the court excludes the witness' testimony and orders the exclusion of the sixth allegation of the answer on the ground that those damages are not compensable either as a question of fact or as a question of law."

A careful examination of the record convinces us that the lower court did not err in denying the special dam-

---

[9] The evidence proved that at the time of the taking Nicolás Iturregui held under lease the parcel taken, where he had planted sugar cane.

[10] However, what the lower court apparently did was to decide that on the basis of the evidence presented the special damages claimed were not compensable. Hence, its conclusion that: "It was further proved that the defendant owns other lands closer to the site of the factory which are more adequate for expanding the latter in the future, if necessary.

"As a question of fact, we hold that such expansion was not necessary either at the date of acquisition or at the date of the trial, and therefore the defendant did not suffer any damage on the account which it alleged and sought to prove." (Tr. Ev., p. 33.)

ages claimed. *Maynard* v. *Nemaha Valley Drainage Dist.*, 94 Neb. 610, 143 N.W. 927; *Olson* v. *United States*, 292 U. S. 246; *Chicago, B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226.

■ The fifth assignment charges that the trial court committed an error of law in basing part of its findings of fact on information obtained at an inspection of the premises, of which no minutes were made or a record kept.

That information referred to the number of heavy-motor vehicles which every day unloaded sugar cane at the Central Victoria, and was furnished to the judge of the lower court by the witness for appellant, Ramón Ramos Jr., Administrator of the Central, at the inspection made and in the presence of the attorneys for the parties.

In raising this question for the first time before this Court, appellant has failed to show that the error, if committed, was prejudicial. In the light of the doctrine of the cases of *Lampón* v. *Línea Romero*, 60 P.R.R. 207, and *Pepín* v. *Ready-Mix Concrete*, 70 P.R.R. 723, we must dismiss this error.

■ The lower court concluded that the just market value of the parcel taken was $4,000 per cuerda. In its last assignment appellant attacks this conclusion on the ground that the weighing of the evidence was erroneous.

The error was not committed. The evidence supports the conclusion challenged on the just value of the parcel taken. Consequently, the same will not be disturbed on appeal. *People* v. *Heirs of Quiñones*, 71 P.R.R. 242.

For the reasons stated, the judgment is affirmed.

Mr. Justice Sifre did not participate herein.